United States and Mr. Rosenblatt, you may begin. Close enough, Judge. It's actually Neil Gary Rosenzweig. Rosenzweig. Court appointed for Mr. Rolle on appeal. Mr. Rolle was convicted of two alien smuggling statutes and neither one of those statutes provides an express statement by Congress as to whether the statutes apply extraterritorial to his conduct outside of the United States territorial limit. Well, what do we do with the amendment of the statute in 1986 by Congress changing the language in the statute from bringing brings into the United States to the United States? And it seems like that was in direct response to Judge Spellman's en banc ruling in the United States v. Anaya to give 1324 extraterritorial application. What do we do with that? Doesn't that clearly rebut the presumption against extraterritoriality? I don't believe so, Your Honor. That had more to do with where the illegal aliens had to end up because there were instances where people who were responsible for bringing them to the United States were not being prosecuted because unless the alien was allowed entry into the country, then the prosecution would not be successful. It didn't say anything as to where the person bringing the alien from had to be. It's just as easily as it is in most of these statutes where the court has to construe whether there's extraterritoriality that conduct could be either outside the U.S. territory or inside the U.S. territory and still violate the statute. Congress was certainly concerned about the inundation into the country of illegal aliens, but it really said nothing about whether the conduct could be outside, inside, or both. Where would you draw the line for inchoate offenses like attempt? Again? At the water's territorial edge? No, because that's not the only way that you can be convicted of an attempt to smuggle aliens. But again, this can happen from inside your living room or my living room in Hollywood using the resources that are available to me, such as the internet and particularly the dark web. I can provide whatever is necessary to somebody overseas to get them into the country. So, I don't think it's just a question of the fact that an attempt has been made and that it necessarily follows that that attempt had to have started outside the territory. What do you say, so you started from the proposition that there's a presumption against extraterritoriality, but is that the right starting place in light of Bowman and not Aramco? Well, I really wanted to save that for the end, Your Honor, but since you're forcing me into that at this point, I think there's a bottom line. If Bowman has to be followed, then I'm sunk. And I think that the problem is that also the precedent rule, which would basically require the same result. However, there is an exception when an intervening Supreme Court case has so undermined a prior panel precedent as to have abrogated it. And I think that that's applicable here. Again, whether to start with Bowman, Bowman, to the extent that it even acknowledged that there was a presumption against extraterritoriality, carved out an exception for certain criminal statutes, which it feels didn't need to rely on their particular locus to afford the statute extraterritorial. Extraterritoriality. And in addition, in those cases, the extraterritorial nature of the statute could be inferred from the nature of the crime. Now, that was in 1922, 101 years ago. There were, I don't even think that there had been the expression presumption against extraterritoriality, but certainly Bowman created an exception and said that in statutes such as it wasn't necessary to go through that. We simply look at the fact that the statute is designed to protect the border or whatever, and that's enough. Yeah, but what do you say? I mean, and so I think you're wise to concede that point, so I'm not going to belabor it, but I will ask. So, you know, since Bowman, since Aramco, I think we have come back and applied the Bowman exception to Aramco. I think that's the way we've characterized it. We've said Bowman, we've continued to apply it. What do we do with the fact that this court has continued to apply Bowman in the criminal context, you know, regardless of Aramco? Well, first of all, I think that the statute cited by the government, the cases cited by the Supreme Court, cases of Morrison in 2010 and RJR Nabisco, and those cases represented a certainly a sea change in the law on extraterritoriality in this country. Yeah, so we have Frank, United States versus Frank, which is a 2010 case that applies the Bowman exception. What do you think about that? I don't remember the actual dates of that decision as compared with the Morrison opinion, but I don't believe that it mentions Morrison at all. Yeah, I think you're right about that. And Morrison, again, the differences between Bowman and the Morrison and RJR cases is significant and very important. If Bowman said that there's an exception and we're not going to any kind of presumption against extraterritoriality, then how can that possibly be squared with Morrison and RJR, which say, we apply the presumption against extraterritoriality across the board? But for us, let's take that at face value. For a statute such as the one we have here, the statutes, there are two of them, that deal with alien smuggling, that can only, by definition, involve individuals who are outside of the United States, who are being brought into the United States. They are outside the territory. Why doesn't the statute, by its very nature, indicate that it has an extraterritorial sweep? Because the focus doesn't depend on where the alien is coming from. But the alien has to come from outside of the United States. What? That still doesn't say anything about whether the statute applies extraterritoriality in the clear way, an affirmative way, that the Morrison and RJR courts have required. Let me go back to my prior question. And you answered it by pointing to a situation where someone based in the U.S. was doing something in terms of an attempt to facilitate the bringing of aliens into the country. But if there are no United States individuals involved, any attempt or conspiracy charge is limited to someone crossing over the border, right? Whether it's in the air or in the water or on the ground. Otherwise, you can't have an attempt conviction, right? That's your position. You've got to draw the line at the border, right? No, I don't think that that's what I said. I think that I said that you could have failed attempts that originate on either side. No, but I'm talking about something that doesn't originate here. Because you answered it by referring to someone who was in her in his or her house in Dade County or Broward County and on the Internet and facilitating. I understand that. If the only way if everyone involved is outside of the United States, you can only commit an attempt once you cross the border when you would not have extraterritorial application, right? So if you had the scheme originates, let's say, in Cuba, and everybody germane to the scheme is in Cuba, there's nobody in the United States involved. The aliens pay the smugglers, the smugglers get someone to take them on a boat. And as they travel in the Florida Straits, there's no attempt, legal attempt, until they hit the international border mark on the water. Once they cross that border mark, there's an attempt if they get caught, right? That's the way you would slice the statute. Well, I'm not really certain that I would, but tell me, tell me, I don't know when is there in that in that fact pattern? When is there an attempt that can be prosecuted by the federal government? Well, at the point that they cross the border, is that not a domestic application? Right, that's exactly my point. That's where you would draw the line, right? That's probably where I'd have to draw the line. Yeah, okay. But again, you know, if it were a follow up to that, which is, I think that's right. But one of the problems I'm having with the argument is, if you wait until the border is you have in fact smuggled the alien into the United States, you haven't attempted to do it, you've crossed the border, you've got them into the United States. What do you say about that? Well, I would think that it would be a completed crime that took place within the United States territory. I mean, here we have a situation where the question really is, does the statute clearly indicate that whether you're attempting to bring or intending to bring aliens in and you're five miles outside the territorial limit, or you're 100 feet inside the territorial limit? Does Congress basically say, in a manner required by our more recent Supreme Court? So if we accept your argument and interpret the statute that way, we're going to create a split, aren't we? I mean, is there anything about this case? I certainly hope so, Judge Wilson. Yeah, okay. I mean, that's . . . There's nothing about this case that makes it different from the analysis in the Fifth or the Ninth or the District of Columbia circuits. Well, I think you were referring to Villanueva in the Fifth Circuit and to the Delgado . . . Yeah, there's nothing about this case that makes it different. No, they're all applying Bowman. I mean, that's the problem. Nobody seems to give even lip service to the Supreme Court's Morrison cases. Do those cases mean nothing, considering how they conflict with Bowman? Bowman would give you an exception. This kind of criminal statute doesn't require that analysis. Morrison, RJR, we do it in every case. Not only that, there are other important reasons, but if it's okay with your honors, I'll wait until my rebuttal time. All right. Thank you. Thank you, Counsel. And Ms. Hernandez, you may proceed. Thank you, your honors. It may please the court. Jadae Hernandez for the United States, and I tried the case below. Section 1324A applies extraterritorially under Bowman because it is the type of crime that is not logically dependent on locality, but enacted because of the right of the government to defend itself against obstruction or fraud wherever perpetrated. The defense's reliance on RJR is misplaced because it- Hang on one second. She doesn't have any time up right now. I just- That's all right. Sorry. You could have just kept going forever. We would have never known. I do not need that much rope to hang myself. Bowman and RJR are not at odds. Here's why. They represent complementary approaches toward overcoming the presumption. That's one way to understand them. The other way to understand them is that Bowman creates an exception that was categorically not at play in any of the scenarios with RJR, Morrison, or Aramco before that. The defense argues that somehow Morrison-RJR was a watershed moment, that it created new law, and that the cases cited by the government in our briefs essentially are no longer applicable because of it. However, Morrison-RJR were all rooted in Aramco, which restated the presumption. Bowman itself acknowledges the presumption against extraterritoriality, where you've got that category one cases that are, in fact, logically dependent on their locus, because they affect domestic concerns. Crimes against the person, for example. But that second category of crimes, where the United States, for example, is directly implicated, that does not activate that presumption. That's one way of reading it. Second way of reading it is you look at context. And in this case, context is, in fact, dovetails directly with the text of the statute. Does it matter that Bowman involved American citizens or American residents on the defense side? No, it does not, Your Honor. And here, I'm going to crib directly from the Delgado-Garcia DC Circuit opinion that specifically said that Bowman's analysis did not turn on the nationality of the individuals involved. It does not, for purposes of what the conduct that the statute is getting at, as Your Honors have indicated in the questions to the defense, the importance of the statute and what it turns on is the act of bringing in non-citizens into the United States. That's what the statute turns on. It does not turn on the nationality of the perpetrators. And in fact, in the hypothetical that Judge Jordan provided, where you've got perpetrators that are outside of the United States, the only way that the crime could be completed, or excuse me, the only way that you could have an attempt is if the crime itself develops exclusively outside of US territorial waters because it would be completed once the aliens come to the United States. So all, in your view, all smuggling offenses prescribed by the US code would necessarily apply in an extraterritorial way? I don't think we need to take such a broad reading. However, if we look at... Well, you can only smuggle something into the United States from a place outside of the United States. That is correct. And so what's the difference? Well, I would say if we don't necessarily need to take such a broad reading, I think that's certainly one possible way. I agree. I want to know where the stopping point is for you. Well, in this case, right? Not in this case. I want to know, because we have to figure out not only how to decide the case, but how to write an opinion one way or the other. And so my question to you is, if we accept your argument all the way through, does it mean that every single smuggling statute gets extraterritorial application? I think that's very possible. And what experience tells us from the previous cases in the former Fifth Circuit and in the Eleventh Circuit is that where you've got cocaine smuggling, for example, or conspiracy to export or import cocaine, that's the Baker and the McAllister cases. You do impute extraterritoriality there because, as your Honor said, there's essentially one way to complete or even attempt to complete the act. What if the aliens are coming from China and the United States Navy intercepts a boat with some evidence that there was an effort to bring aliens, an attempt to bring aliens to the United States? The statute has now been amended. Would there be a rebuttal of the presumption against extraterritoriality that would apply in a case like that? Well, the point is to rebut the presumption against extraterritoriality, you look at the statute and what the statute aims to cover. It's an all or nothing, essentially. So, for example, in the Delgado-Garcia case— It doesn't matter where the alien is coming from, as long as there's evidence that they attempted to bring an alien into the United States, regardless of where they ended up, that would constitute a violation of 1324? By its very terms under the statute, that would apply. For example, in the Delgado-Garcia case, the defendants were actually apprehended off of the coast of Guatemala, and they were brought into the United States. Actually, initially brought into Guatemala and then transported to the United States. So, the point is— The argument is that the statute is clear, that any effort to bring an alien to the United States, regardless of where they're intercepted, that would constitute a violation of 1324. That is correct, because the question is, does the statute limit itself by its terms? To this side of the U.S. border, domestic conduct, or does it apply outside of the U.S. border? And the analysis of the courts that have addressed this don't focus on how far away from the U.S. border you get. Now, as the Delgado-Garcia court pointed out, there are other limitations on the exercise of our extraterritorial reach, but they concern the executive in other ways. They're a matter of diplomacy, they're a matter of international law, but for purposes of the analysis of the statute, it's an all or nothing. Does it apply within the United States exclusively? Therefore, we are leaving half of the border completely uncovered, the outside-facing part of the border, or are we acknowledging that by its very terms, alien smuggling involves protecting that other side of the border? So a payment made completely overseas before the smuggling venture has physically begun can be prosecuted within the United States as long as you apprehend the individuals in question. So to use Judge Wilson's example, a payment from a broker to a smuggler in China is prosecutable in the United States, assuming you can get a hold of the suspects. Assuming you can get a hold of the suspects and assuming you can show the requisite intent, you could potentially charge that as either a conspiracy or an attempt. One more question for you. The government's brief doesn't separately address section 1327, so I presume you think they both stand or fall together. 1327, I don't entirely understand how it would apply in this case because the defendant was acquitted. The district court addressed both in its order. That's right. The government doesn't separately address section 1327 in its brief, so my question is you think the two of them stand or fall together under the same analysis. There's no difference between them for extraterritoriality purposes. Because they use the same language, or essentially the same language to bring to. For 1327, the main difference, as I understand it, is the status of the individual being brought. Right. I just want to make sure you don't see any difference between the two. It's not like you can prevail on one statute and lose on the other. You either win on both or you lose on both, right? Well, there's several statutes at work. There's the encouraging and inducing, and then there's the bringing to statute. And then separately, there's 1327, which the defendant was acquitted of. So I don't necessarily see how that applies here, considering he was acquitted of 1327, which is the individual who has been previously deported. For purposes of the first two, the encouraging and inducing, and the bringing to, I think there is enough of a similarity between the language that the analysis is very similar between the two. For the bringing to, there is certainly a stronger textual hook because of the amendment to the statute in 1986. But the point of the encouraging and inducing is to capture an even broader swathe of conduct, because it's anyone who encourages and induces an individual to come to, which is very parallel to the language in the other subsection, which is to bring to. And so it's, again, I think there is enough of a similarity that the statutes, the analysis is virtually identical. However, I do acknowledge that there is a difference in the specific language that is being used. Do we need to even address 1327 if he was acquitted? Or was there just one 1327 count, right? That's correct. That was count 34. I do not believe that the court needs to address that in this case. If the court has any other questions, I'm more than happy to address them. However, I would strongly, I would recommend that the court, that this court affirm the district court's well-reasoned opinion below. All right. Thank you, counsel. Mr. Rosenzweig. Your honors, I think it's important that I finish making my points about how Morrison and RJR have undermined not only the Bowman reasoning, but the rationale used in our circuit and other circuits that have followed that. In addition to Bowman carving out an exception for certain criminal statutes and not subjecting them to any presumption against extraterritoriality, it allows the congressional intent to be inferred from the nature of the crime. RJR and particularly Morrison, because this Morrison is where these things first came up, rejected those things. They also rejected the rationale that's used in most of our 11th Circuit precedent and in cases like Villanova and Delgado. And that rationale is, it doesn't make any sense for Congress to have enacted a law aimed at preventing alien smuggling, drug smuggling, weapon smuggling, whatever, and have curtailed the ability of the government to enforce those statutes by deciding that they did not apply extraterritorial. In RJR, the Court had occasion to discuss, in the context of our antitrust laws, the Pfizer case, which was also a Supreme Court case written prior to the RJR and Morrison cases. They cited that case and the Supreme Court wrote that the Pfizer Court expressed concern that it would defeat the purposes of the antitrust laws if a defendant could escape full liability for his illegal actions. But this justification was merely an attempt to divine what Congress would have wanted had it considered the question of extraterritoriality, an approach we eschewed in Morrison. Their job is not to ask whether they think Congress would have wanted a statute to apply to foreign conduct if it had thought of the situation before the Court. And all of the cases decided regarding extraterritoriality prior to Morrison and RJR are doing exactly that. They're finding a way to basically say, this is what Congress would have wanted, for sure. Makes common sense. That's not what's at issue in Morrison and RJR. I'm not talking about common sense. If that's all there was to it, then there's no problem with Boeing. There's no need for Morrison and RJR. As far as the contextual provisions or the contextual reasoning in support of the extraterritoriality of a statute, the RJR Court was called to decide whether the RICO statutes were applicable extraterritorially. And they found that they were in certain provisions. And those provisions expressly provided extraterritorial application. So in a particular case, if someone was charged with violating those predicates, which applied expressly extraterritorially, then the statute was applicable to them. If they weren't charged with those predicates, it wasn't. So the Court made a very, very clear distinction as to, oh, and maybe more importantly, the Court basically said in RJR that it's hard to imagine a clear indication of congressional intent than this. We don't have predicates in the statutes in the case of Barr. I think that these pronouncements in RJR and Morrison have done enough to undermine the prior precedents here and elsewhere to make it necessary not to follow Bowman anymore. I think your argument is a good one, but hasn't the Supreme Court told us time and again that when a decision of theirs seems to be completely undermined by its later cases, it's up to that Court and only that Court to overrule the prior precedent, that it's not for a lower Court to do that? I don't think that that's what, well, and again, I don't think I'm making the argument so much that Bowman is abrogated as the cases that construe extraterritoriality in the 11th Circuit have been abrogated. That's one thing, but with regards to Bowman, I think it hasn't been overruled by the Court. Maybe you can argue that it's limited to its facts and shouldn't be extended beyond them, I don't think it's for us to say that Bowman is no longer a good precedent, on its facts at least. Well, certainly until the Supreme Court expressly overrules it, it hasn't been overruled. I think that's fair enough, but with respect to what this Court should follow, I don't think Bowman does what it needs to do in light of Morrison and RJR. And I thank the Court and ask on behalf of Mr. Roll that his convictions be reversed and his sentence is vacant. All right. Thank you, Mr. Rosenzweig, and I see that